**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CV-80147-ROSENBERG**

SARAH ANN STRATEMEYER,

    Plaintiff,

v.

NORTHSTAR CONSTRUCTION
MANAGEMENT COMPANY, INC.,
et al.,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION IN LIMINE**

**THIS CAUSE** comes before the Court on Defendants' Motion in Limine at docket entry 32. The Court has reviewed Defendants' Motion [DE 32], Plaintiff's Response [DE 37], Defendants' Reply [DE 47], and the record, and is otherwise fully advised in the premises. For the reasons set forth below, Defendants' Motion in Limine is **GRANTED**.

**I.    BACKGROUND**

This is a personal injury action arising out of a rear-end collision that occurred on or about August 7, 2019. DE 1-1 at ¶¶ 6-8. Plaintiff brings negligence claims against Defendant Kyle Thomas Pliler and his employer, Defendant Northstar Construction Management Company, Inc. on theories of direct and vicarious liability. *Id.* at ¶¶ 9-15. Plaintiff alleges damages for her bodily injuries and, among other harm, her "loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition." *Id.* at ¶ 12.

At the time of the incident, Plaintiff was enrolled as a nursing student at Renaissance Health Institute. DE 32 at 1. Over two years later, in January 2022, Plaintiff "failed her nursing school

exit exam, a necessary step to becom[ing] a nurse." *Id.* at 3.  Plaintiff "relates that failure to the mild traumatic brain injury that she [allegedly] suffered" as a result of the incident. DE 37 at 6.  In support of her case, Plaintiff has disclosed that she intends to call two experts, Dr. Craig H. Lichtblau and Dr. Julianne Frain, to testify at trial. DE 32 at 2.  Dr. Lichtblau is a physical medicine and rehabilitation doctor who is expected to testify about Plaintiff's future medical costs, disabilities, and life expectancy due to the crash. *Id.*  Dr. Frain is a vocational rehabilitation expert who is expected to testify about the limitations on Plaintiff's ability to work in the future due to her injuries. *Id.*  Defendant contends that both experts are also expected to testify that the subject incident caused Plaintiff to fail her exit exam. *Id.* at 3.

On December 8, 2023, Defendants filed a motion in limine to "preclude Dr. Lichtblau and Dr. Frain from offering opinions regarding the Plaintiff's alleged inability to pass her nursing school exit exam and from being permitted to relate her test failure in January 2022 to the subject accident in August 2019." DE 26 at 3.  While Defendants relied solely on Rule 403 in their motion, they directly challenged the reliability of Plaintiff's experts. *See generally id.*  The Court therefore construed the motion as invoking Federal Rule of Evidence 702 and the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*. *See* DE 31 at 4; 509 U.S. 579 (1993).  On January 30, 2024, the Court denied Defendants' motion in limine without prejudice, directing the parties to brief the *Daubert* and Rule 702 inquiry. DE 31 at 5.  On February 6, 2024, Defendants filed the Motion in Limine at issue addressing *Daubert*. DE 32.  Plaintiff timely responded [DE 37], and Defendants timely replied [DE 47].

## II.     THE PARTIES' ARGUMENTS

In their Motion, Defendants request that the Court prohibit Dr. Lichtblau and Dr. Frain from testifying about Plaintiff's pre-incident intellectual and cognitive functioning and Plaintiff's

2

inability to pass her nursing school exit examination as a result of the 2019 accident. DE 32 at 3. Defendants attack the testimony on three bases: (1) neither expert is qualified to opine on these matters; (2) the experts' testimony is *ipse dixit*, unreliable, and unsupported by facts or evidence; and (3) the testimony would confuse the jury. *Id.* at 5-13.

In her Response, Plaintiff argues that: (1) the threshold to be a qualified expert is low, and Dr. Lichtblau and Dr. Frain meet that threshold; and (2) the questions Defendants raise as to reliability go to the weight of the evidence, rather than admissibility. *See* DE 37 at 3-4, 6, 9. Plaintiff points to other cases in this district in which Dr. Frain and Dr. Lichtblau have faced *Daubert* challenges and survived. *Id.* at 8. Plaintiff does not directly address the two narrow topics of testimony that Defendant seeks to exclude.

In their Reply, Defendants argue that Plaintiff mischaracterizes Defendants' argument. DE 47 at 1. Defendants agree that Dr. Frain and Dr. Lichtblau are qualified in their respective fields. *Id.* However, Defendants argue that both experts "should be prohibited from offering opinions outside of [their] scope [of expertise], such as the Plaintiff's pre-accident intellectual or cognitive functioning or, specifically, whether the Plaintiff would have failed Kaplan Exit Exam but for the subject incident." *Id.*

### III.   ANALYSIS

The Court analyzes the *Daubert* inquiry as it applies to the Defendants' narrow request that the Court prohibit Dr. Lichtblau and Dr. Frain from testifying as to (1) Plaintiff's pre-accident intellectual or cognitive functioning and (2) whether the 2019 accident caused Plaintiff to fail her exit examination. First, the Court summarizes the Eleventh Circuit's interpretation of the *Daubert* standard. Next, the Court examines each expert's testimony. For the following reasons, the Court **GRANTS** the Motion in Limine to exclude portions of each expert's testimony.

3

> A. *Admissibility Under the* Daubert *Standard*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, expert testimony is admissible only if it is both reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *see* 509 U.S. 579 (1993). Expert testimony is admissible, *i.e.* reliable and relevant, under Rule 702 if "(1) the expert is qualified to testify regarding the subject of the testimony; (2) the expert's methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact at issue." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1304 (11th Cir. 2014) (internal quotation marks and citation omitted). These criteria are known as "qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Trial courts must act as "gatekeepers" to ensure that expert opinions meet the standards for admissibility and that "speculative and unreliable opinions do not reach the jury." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). The proponent of expert testimony bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of

the evidence. *Hendrix ex rel. G.P. v. Evenflo Co., Inc*. (*Hendrix II*), 609 F.3d 1183, 1194 (11th Cir. 2010).

    B.    *Dr. Frain*

Dr. Frain is a vocational rehabilitation expert. DE 32 at 6. Defendant concedes that Dr. Frain is an expert in her field but seeks to prohibit her testimony as to Plaintiff's pre-accident intellectual functioning and as to the argument that but for the 2019 accident, Plaintiff would have passed her exit examination. DE 47 at 1. Here, however, the Court need not conduct a *Daubert* inquiry. As a threshold matter, two procedural issues bar Dr. Frain from testifying as to Plaintiff's pre-accident intellectual functioning and that but for the accident, she would not have failed the exit examination: (1) failure to disclose the testimony under Federal Rule of Civil Procedure 26(a)(2)(B)(i); and (2) failure to properly refute Defendants' arguments.

    i.    Failure to Disclose

Under Federal Rule of Civil Procedure 26(a)(2)(B)(i), an expert witness's report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." In other words, "a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. Here, Dr. Frain does not offer any opinions as to Plaintiff's pre-accident intellectual functioning in her report,[1] which is predominantly forward-looking. *See generally* DE 37-1. Furthermore, Dr. Frain directly addresses the issue in her deposition testimony, confirming that she will not opine as to the topic:

> Q: Do you know how [Plaintiff] would score on the Wonderlic Scholastic Level Exam prior to the 2019 accident?
>
> A: I don't have an independent opinion on that. <u>Obviously, there are opinions contained in the neuropsychological evaluation as to premorbid intellectually</u>

---

[1] Dr. Frain does address Plaintiff's pre-accident *earning* capacity, but this is a distinct topic. *See* DE 37-1 at 24.

<u>functioning, and I would defer to that expert for that area. I typically don't testify with regards to that.</u>

DE 32-6 at 38:16-24 (emphasis added). Later in the deposition, Dr. Frain again states that "like I said before, I'm <u>not offering opinions really on premorbid intellectual or cognitive functioning</u>." *Id.* at 54:15-18 (emphasis added). Therefore, the Court finds it proper to prohibit Dr. Frain from testifying on this topic.

Additionally, while Dr. Frain's report does address the accident as a contributing factor in Plaintiff's inability to finish her nursing program (i.e., failing the examination), she only offers it as an assumption underlying her analysis and does not opine as to causation. Specifically, Dr. Frain states that "it can be assumed that [Plaintiff] would have *likely* completed the nursing program she was enrolled in had the accident on August 7, 2019 not occurred because of her reported difficulty with concentration and other TBI symptoms she is experiencing." DE 37-1 at 24 (emphasis added). Furthermore, in her deposition testimony, Dr. Frain states that she does not have independent causation opinions connecting the accident to Plaintiff's loss of earning capacity:

> Q: . . . . Are you, yourself, offering independent opinions as to whether the 2019 accident caused a limitation in Ms. Stratemeyer's ability to earn income, or are you relying on her physician's conclusions in that regard with whom she's treated since the 2019 accident?
>
> A: Sure. So obviously, that's a little bit complicated, because I am offering independent opinions with regards to her earning projection and her loss of earning capacity, however, <u>from a medical standpoint, I do not have independent causation opinions</u>. I'm relying on the medical records that have been issued by treating doctors and medical experts involved in this case and what's clearly documented as injuries or diagnoses and corresponding limitations that are specific to the August 2019 accident.
>
> Q: Okay. So just so I'm clear, <u>you are not offering an independent medical causation opinion, you're relying on plaintiff's treating doctors since 2019 in order to basically rely on your analysis on her loss of earning capability</u>; is that fair to say?
>
> A: <u>Correct</u>.

6

DE 32-6 at 26:1-22 (emphasis added).  Dr. Frain later admits that that she cannot say whether "but for" the accident, Plaintiff would have passed the examination:

> Q: Okay. And you will not concede to me that she may not have passed this test, even if she was not involved in the 2019 accident, despite giving the opinion that she likely failed it because of the accident?
> A: <u>I can concede that it's possible or that she may not have, sure</u>. I mean, I can't say what would have happened if the accident didn't happen, because the accident did happen.

DE 32-6 at 83:23-84:6 (emphasis added).  However, later in her deposition, Dr. Frain opines that the 2019 accident was a "contributing factor" in Plaintiff's failure to pass the exit examination, given her medical issues, and that the accident "likely" caused Plaintiff to fail the exit examination.  *See id.* at 65:14-21, 80:22-81:11.

As Dr. Frain's report does not disclose any opinions on whether the 2019 accident caused Plaintiff to fail her exit examination, she may not testify on that topic pursuant to Federal Rule of Procedure 26.[2]  Given that Dr. Frain is prohibited from testifying on causation on this topic, the Court also excludes any opinions by Dr. Frain related to whether the 2019 accident was a "contributing factor" or "likely" caused Plaintiff to fail the exit examination.  Finally, the Court excludes any opinion about whether the 2019 accident "might have" caused Plaintiff to fail the exit examination, as this is impermissibly speculative.  The Court notes that Dr. Frain may still testify as to the assumption she used in her analysis—that the 2019 accident caused Plaintiff's medical injuries.

  ii.  Failure to Refute

Even if Dr. Frain's report sufficiently disclosed an opinion on both topics discussed above, Plaintiff's Response [DE 37] to Defendants' Motion does not adequately respond to Defendants'

---

[2] Because Dr. Frain does not disclose an opinion on this topic, it necessarily follows that she has not demonstrated how such an opinion was a product of reliable principles and methods.

7

arguments. In her eleven-page Response, Plaintiff spends just four pages on argument. *See generally* DE 37. Of those four pages, she spends one page on other witnesses' testimony and half a page on unrelated cases in which either expert has defeated *Daubert* challenges. *Id.* at 6-8. Plaintiff makes the following arguments in the remaining two and half pages: (1) that both experts are highly qualified and have used accepted methodology in their fields; (2) that Defendants seek to introduce "irrelevant and speculative matters" like the exam passage rate; and (3) that if the experts failed to include variables or relied on incorrect assumptions, those issues affect the weight of the evidence, not admissibility. DE 37 at 6-7, 9. The Court notes that Defendant *agrees* that both experts are, as a general matter, qualified. DE 47 at 1. Plaintiff's remaining arguments are simply incorrect, as the Court determines that Defendants' arguments do impact admissibility in this case.[3]

Plaintiff's Response does not address the two topics that Defendants seek to exclude. In fact, Plaintiff's Response arguably mischaracterizes Defendants' Motion as broadly requesting to exclude Dr. Frain's entire testimony. *See id.* ("Defendants' Motion seeks to exclude, as 'unfairly prejudicial' testimony by Julianne Frain, Ph.D., a vocational rehabilitation expert who has evaluated the Plaintiff and reviewed all of her medical records . . . ."). However, Plaintiff's Response is wholly silent as to why, under the *Daubert* standard, Dr. Frain should be permitted to testify *specifically* about the two topics in Defendants' Motion. As Plaintiff fails to refute Defendants' arguments, the Court finds that she has failed to appropriately respond. *E.g., Carter v. BPCL Mgmt.*, No. 19-CV-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to

---

[3] Only once an expert's opinion has satisfied the *Daubert* reliability standard for admissibility is the Court restricted from "exclud[ing] the opinion simply because it believes that the opinion is not – in its view – particularly strong or persuasive." *Seamon v. Remington Arms Company, LLC*, 813 F.3d 983, 990 (11th Cir. 2016). Finally, assumptions based upon conjecture are inadmissible. *Rink*, 400 F.3d at 1292.

respond"); *see also* Local Rule 7.1(c) (permitting a court to grant a motion by default when a respondent fails to respond). Therefore, for this reason, Defendants' Motion in Limine is similarly **GRANTED** as to Dr. Frain's testimony on both topics.

C. *Dr. Lichtblau*

The Court begins by examining Dr. Lichtblau's testimony through the disclosure requirement of Federal Rule of Civil Procedure 26 and Plaintiff's Response. The Court then turns to the *Daubert* standard.

i. Failure to Disclose

Like Dr. Frain, under Federal Rule of Civil Procedure 26(a)(2)(B)(i), Dr. Lichtblau's report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Here, Dr. Lichtblau's report similarly does not provide Defendants with the requisite notice that he will opine as to Plaintiff's pre-accident intellectual functioning and causation for Plaintiff's failure of the exit examination.

Dr. Lichtblau is being put forth as an expert in his field of physical medicine and rehabilitation. DE 32 at 6. In his report, Dr. Lichtblau opines on Plaintiff's medical functional capacity and level of impairment. *See* DE 37-2 at 90-91. Specifically, Dr. Lichtblau notes that Plaintiff has "the functional capacity to work 8 hours per day on an uninterrupted basis at this time," recommending "sedentary light" positions. *Id.* at 90 (emphasis omitted). Dr. Lichtblau also notes that Plaintiff's disability will increase as she ages, and she will suffer from "acute, intermittent exacerbations of chronic pain and discomfort." *Id.* at 91.

Dr. Lichtblau does not directly address Plaintiff's pre-accident intellectual functioning in his report. Furthermore, in his deposition, Dr. Lichtblau describes Plaintiff's injuries and how they have and may continue to affect her *post-accident* levels of cognitive functioning. *See* DE 32-5 at

9

76:16-77:8.  Although Dr. Lichtblau does not say that he will *not* opine on the topic of Plaintiff's pre-accident intellectual functioning, the Court finds that he has not properly disclosed any opinion on that topic.  Therefore, Dr. Lichtblau is prohibited from testifying as to Plaintiff's pre-accident intellectual functioning.

As to causation, Dr. Lichtblau's report seems to state that the 2019 incident is the basis for many of Plaintiff's current medical conditions, mentioning repeatedly that Plaintiff's past medical issues are "secondary" to the injuries she sustained in the 2019 accident. *See generally id.* However, Dr. Lichtblau does not include in his report any opinion as to whether the 2019 accident specifically caused Plaintiff *to fail her exit examination*.  In his deposition, Dr. Lichtblau similarly focuses on medical causation, rather than Plaintiff's exam failure. *See, e.g.*, DE 32-5 at 19:3-11 ("So causation in this case is very simple, because for four years prior to subject incident, she didn't have any problems, . . . . After subject incident, . . . she was diagnosed with mild traumatic brain injury.").  In fact, he declines to comment on the likelihood of Plaintiff passing her exit examination going forward but says that "it's going to be a very difficult road for her," due to her injuries.  *Id.* at 72:2-16.  No part of Dr. Lichtblau's report or deposition testimony includes an opinion that the 2019 accident caused Plaintiff to fail her exit examination.  Therefore, the Court finds it proper to prohibit Dr. Lichtblau from testifying on this narrow topic as well.[4]

     ii.     Failure to Refute

For the same reasons that Plaintiff has failed to refute Defendants' arguments as to Dr. Frain, Plaintiff has failed to refute—and therefore respond to—Defendants' arguments as to Dr. Lichtblau. Plaintiff's Response is similarly silent as to why, under the *Daubert* standard, Dr. Lichtblau should be permitted to testify *specifically* about the two topics in Defendants' Motion.

---

[4] Dr. Lichtblau may, however, still testify as to medical causation—that is, whether the 2019 accident caused Plaintiff's injuries.

Therefore, the Court finds that Plaintiff has failed to appropriately respond, and the motion may be granted by default. On this basis, Defendants' Motion in Limine is **GRANTED** as to Dr. Lichtblau's testimony on both topics.

    iii.    *Daubert* Analysis

Unlike Dr. Frain, Dr. Lichtblau does not explicitly state that he will not testify as to the two topics at issue. Therefore, in the interest of thoroughness, the Court, in the alternative, examines his analysis under the *Daubert* standard. Here, the Court assumes Dr. Lichtblau meets the *Daubert* standard for the qualification[5] and proceeds to analyze the second prong, reliability.

To satisfy the second *Daubert* requirement, a court must assess "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Chapman*, 766 F.3d at 1306 (internal quotation marks and citation omitted).

In *Daubert*, the Supreme Court identified four factors to guide assessment of an expert's methodology: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *Id*., 766 F.3d at 1305 (quoting *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Daubert*, 509 U.S. at 593-94)). Additionally, an opinion is not reliable when there is "too great an analytical leap between the [supporting] data and the opinion proffered." *Hendrix*

---

[5] An expert must be qualified to testify to meet the first *Daubert* requirement. An expert may be qualified based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Frazier*, 387 F.3d at 1261. The standard for qualification is not stringent, and an expert need only be minimally qualified in his or her field. *See Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd sub nom. Hendrix II*, 609 F.3d 1183 (11th Cir. 2010). Here, Defendant concedes that Dr. Lichtblau is an expert in his field. DE 47 at 1. The Court assumes that the testimony Defendants seek to exclude falls under Dr. Lichtblau's scope of expertise.

*II*, 609 F.3d at 1194 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). An "expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions." *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004); *c.f. Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").[6]

The Advisory Committee Notes for Federal Rule of Evidence 702 state that experts must account for obvious alternative explanations. *See Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1363 n.3 (S.D. Fla. 2009) (citing the advisory committee notes); *Cavallo v. Star Enterprise*, 892 F. Supp. 756, 771 (E.D. Va. 1995) ("If other possible causes of an injury cannot be ruled out, or at least the possibility of their contribution to causation minimized, then the "more likely than not" threshold for proving causation may not be met"); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) (holding that expert opinion should be excluded where expert fails to consider alternative causes).

Here, the Court addresses Plaintiff's pre-accident intellectual functioning before moving to causation. Dr. Lichtblau's testimony as to Plaintiff's pre-accident intellectual functioning is devoid of any methodology. Dr. Lichtblau did not test Plaintiff's pre-accident intellectual functioning; he only diagnosed her medical condition *post-accident*. Therefore, there is no methodology to be tested under the *Daubert* four-factor reliability test. The lack of methodology also means that any expert opinion provided by Dr. Lichtblau on Plaintiff's pre-accident

---

[6] Plaintiff contends that objections based on an expert's reliance on incorrect assumptions impacts the weight of the evidence, not admissibility. *See* DE 37 at 9. As a threshold matter, the Court notes that an expert's assumptions *can* bear on admissibility. *E.g., Rink*, 400 F.3d at 1292. Only once an expert's opinion has satisfied the *Daubert* reliability standard for admissibility is the Court restricted from "exclud[ing] the opinion simply because it believes that the opinion is not – in its view – particularly strong or persuasive." *Seamon v. Remington Arms Company, LLC*, 813 F.3d 983, 990 (11th Cir. 2016).

12

intellectual functioning would be *ipse dixit* and would necessarily include an impermissible analytical leap. Therefore, it is unreliable and inadmissible.

As to causation on Plaintiff's exit examination, two issues affect the reliability of Dr. Lichtblau's testimony: lack of methodology and failure to consider alternate causes. First, as with Plaintiff's pre-accident intellectual functioning, the Court cannot evaluate a methodology under the four-factor *Daubert* reliability test because Dr. Lichtblau has not explained any methodology used to conclude that the 2019 accident caused Plaintiff to fail her exit examination. Second, and perhaps the most critical flaw in Dr. Lichtblau's analysis, Dr. Lichtblau does not consider the low passage rate of the exam as an alternative explanation for Plaintiff's failure. Dr. Lichtblau states that this piece of information is irrelevant. *See* DE 32-5 at 68:24. However, simple logic demonstrates that the passage rage directly implicates causation. For example, if every person, including Plaintiff, failed the examination, such a fact would strongly suggest that variables other than Plaintiff's injuries caused her failure, and the passage rate of the exam would not be, as Dr. Lichtblau testified, "irrelevant." This hypothetical is not far from the truth as the passage rate was very low, particularly for first-time test takers.[7] As Dr. Lichtblau did not take this information into consideration, the Court finds that any opinion by Dr. Lichtblau on this subject would not be the product of a reliable methodology. As Dr. Lichtblau's testimony does not satisfy the reliability prong of the *Daubert* standard, Dr. Lichtblau may not testify as to causation related to Plaintiff's failure of her exit examination.

---

[7] 31 of 48 of all exam-takers failed the exam, a passage rate of 35.4 percent. *See* DE 47 at 3. Additionally, only four first-time test takers passed, and the exam results indicate that 29 exam-takers were first-timers, indicating a first-time passage rate of 13.8 percent. DE 32 at 2; *see* DE 32-2.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion in Limine [DE 32] is **GRANTED** as more fully set forth in this Order.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida this 16th day of April, 2024.

_____
HONORABLE ROBIN L. ROSENBERG
United States District Judge

Copies provided to Counsel of Record